IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| ASAAD AMIR HASUAN,[1] | |
| Plaintiff, | CIVIL ACTION NO.: 2:21-cv-16 |
| v. | |
| NURSE LINDSEY GREEN, | |
| Defendant. | |

### REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant's Motion to Dismiss.  Doc. 8.  Defendant Green moves to dismiss based on Plaintiff's failure to exhaust his available administrative remedies.  Doc. 8-1 at 2.  Plaintiff filed a Response opposing Defendant's Motion.  Doc. 17.  Defendant replied, and Plaintiff filed a Surreply.  Docs. 20, 22.  For the following reasons, I **RECOMMEND** the Court **DENY** Defendant's Motion to Dismiss.  Plaintiff's claim against Defendant remains pending.

### PROCEDURAL HISTORY

Plaintiff brought this suit, asserting claims under 42 U.S.C. § 1983, alleging he did not receive proper medical treatment for sleep apnea while incarcerated at Glynn County Detention Center ("GCDC").  Doc. 1.  Plaintiff alleged Defendant Green was deliberately indifferent to his medical needs and violated his Eighth Amendment rights.  Id. at 7.

---

[1] Plaintiff initially filed this case under his previous name, Dante G. Fredrick.  See Doc. 1.  He has since changed his name to Asaad Amir Hasuan.  Doc. 14.

Defendant makes only one argument in her Motion to Dismiss: Plaintiff's claims against her should be dismissed because Plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. Doc. 8. Plaintiff filed a Response, opposing Defendant's Motion to Dismiss. Doc. 17.

## DISCUSSION

### I. Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts

may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL

201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.  Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210.

While exhaustion is a mandatory requirement for suing, one exception exists.  Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 643–44. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-

plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying Turner

#### A. GCDC Administrative Remedies

Under the GCDC Grievance Policy, an inmate must submit the official grievance form within five days of discovery or when he reasonably should have discovered the incident. Doc. 8-2 at 5. The Grievance Committee must review and respond within 15 days of

submission. Id. at 6. After receiving a formal response, the policy states the inmate has three days to accept the findings or appeal to the jail administrator. Id. If an inmate appeals the decision, he is to provide the written reasons for his appeal to the jail administrator. Id. The jail administrator must review and respond to the appeal within 10 days, after which the procedure is terminated. Id.

### B. Plaintiff Exhausted His Available Administrative Remedies

#### 1. *Plaintiff's claim survives under Turner step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.

Plaintiff filed Record Number 567818 on February 9, 2021, in which he identified the issues giving rise to his claim in the instant case. Doc. 8-3 at 2. The claim addresses Defendant Green's alleged deliberate indifference to his needs when she failed to give him the sleep study belt necessary to obtain treatment for his sleep apnea. Doc. 1 at 5–6. The grievance raised the issue by identifying Nurse Green, her failure to obtain the sleep study belt after repeated requests, and the injury suffered by Plaintiff as a result. Doc. 8-3 at 2. Defendant does not dispute this submission is a grievance that adequately identified the issues giving rise to Plaintiff's claims. Nor does she dispute Plaintiff filed his grievance before filing his civil suit. Plaintiff filed his Complaint the same day he received his response—the grievance was reviewed and resolved on February 10, 2021, while the Complaint was signed on the same day. See Doc. 1 at 14; Doc. 8-3 at 2. To be clear, Defendant does not argue Plaintiff filed the suit before receiving a response to the grievance, and there is nothing in the record suggesting he filed

before he received the response.² Thus, the Court assumes he filed the same day, after receiving the response.

Rather, the issue is whether Plaintiff was required to appeal the denial of his grievance before filing suit. It is undisputed Plaintiff did not appeal the grievance. However, Plaintiff asserts there was no appeal option available to detainees at the GCDC at the time. Specifically, Plaintiff asserts he could not appeal the denial of a grievance on the kiosk system where he filed and received responses to his grievances. Doc. 17 at 2. Plaintiff asserts the feature was not added until November 9, 2021, and, thus, he was unable to appeal the grievance denial at issue in this case. Id.

Defendant argues the presence or absence of a kiosk appeal feature is irrelevant because there was a non-kiosk-based appeals process available at the time Plaintiff filed his grievance and Plaintiff was aware of that process.³ Doc. 20 at 5. As proof of Plaintiff's knowledge of the appeal process, Defendant points to a different grievance (Record Number 552901) that Plaintiff pursued to the highest level, showing exhaustion, four months before the grievance at issue in this case. Id. at 5–6.

Plaintiff disagrees with Defendant's characterization of Record Number 552901 and argues there was simply no appeal process available at the time. Plaintiff asserts the grievance

---

² In her Reply, Defendant argues Plaintiff did not legitimately try to resolve his issue by grievance because he stated he was satisfying the PLRA in his grievance. Doc. 20 at 4. However, the PLRA only requires the exhaustion of administrative remedies and does not mention a requirement of a prisoner's sincerity. See 42 U.S.C. § 1997e(c)(1). A prisoner's belief beliefs about viability of a grievance process is irrelevant to proper exhaustion. See Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding the PLRA requires exhaustion even when the prisoner believes the grievance process is futile).

³ Defendant asserts the kiosk appeal feature was actually added in March of 2021, not November, as Plaintiff contends. Whether the feature was added in March or November is immaterial. Both dates are after Plaintiff filed his grievance. The issue here is whether there was a non-kiosk mechanism for appealing grievance denials at the time of Plaintiff's grievance in February.

8

procedures in place at the time were as follows: (1) the inmate would a complaint, (2) whoever is being complained about would the opportunity to tell her side of the story, and (3) the grievance coordinator would resolve the issue.  Doc. 22 at 4–5.

Plaintiff's allegations and Defendant's allegations plainly conflict.  Plaintiff asserts there was no available appeals process when he received a response to his grievance; Defendant asserts there was an appeal process available to Plaintiff and Plaintiff was aware of it.  Compare Doc. 17 at 2 with Doc. 20 at 5.  There is a genuine dispute of material fact, and the Court must take Plaintiff's allegations as true.  Looking solely at Plaintiff's Response, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test.

> **2. *Plaintiff's claim survives under Turner step two, as Defendants have not shown a failure to exhaust.***

The parties' filings implicate a factual question.  Specifically, the Court must determine whether the appeals process was available to Plaintiff at the time he received the denial of his grievance and filed suit.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts."  Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment.  See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of

exhaustion and the availability of the appeals process.  Therefore, the parties have had a sufficient opportunity to develop the record.

Defendant has not carried her burden to show an appeals process was available to Plaintiff at the time his grievance was denied.  The grievance procedure policy states there is an appeal process: the policy directs the prisoner to provide written reasons for the appeal on the grievance form and return it to the grievance coordinator.  Doc. 8-2 at 4, 6.  However, Plaintiff disputes the process described in the policy was available since all grievances are now submitted via kiosk.  Plaintiff asserts the grievance procedures in place at the time were as follows: (1) the inmate files a complaint, (2) the subject of the complaint can tell her side of the story, and (3) the grievance coordinator gives a resolution.  Doc. 22 at 4–5.  While the face of the policy suggests an appeal process was available, Plaintiff directly disputes the existence of such a policy.  Therefore, it is necessary to look beyond the face of the policy.

Aside from the written policy, Defendant points to only one other piece of evidence to demonstrate the availability of an appeal process: Record Number 552901.  Doc. 20-2 at 2.  Defendant asserts Plaintiff appealed this grievance to the highest level just a few months before the grievance at issue in this case, showing Plaintiff was aware of how to appeal the grievance outside of needing a button on the kiosk.  Id.  Record Number 552901 includes Plaintiff's statement, describing two officers who allegedly forced him to eat foods he was allergic to and threatened him when he complained.  Id.  The grievance contains a response by Corporal Finn, refuting the allegations.  Id.  The grievance ends with a findings statement by Undersheriff Corbett, in which he states he reviewed responses from both officers involved and determined there was no evidence they attempted to force Plaintiff to eat improper foods or threatened Plaintiff.  Id.  Undersheriff Corbett states: "The Officers have done nothing to warrant having

11

them banned from having contact with you, thus your appeal is denied. Do not attempt to contact me further about this particular matter, as there are no further appeals and the matter is closed." Defendant contends Corbett's language describing the record as an "appeal" demonstrates an appeal process was available and Plaintiff was aware of the process.

Record Number 552901 is inconclusive as to the existence of an appeal process. In comparing Record Number 552901, which was allegedly appealed, with Record Number 576835, the grievance at issue, there is nothing substantively different other than the level of detail in Record Number 552901 and the presence of the word "appeal." Compare Doc. 20-2 at 2 with Doc. 8-3 at 2. On their face, the formats of both forms appears much more like how Plaintiff argues the process worked. See, e.g., Doc. 8-4 at 51.

Additionally, in Record Number 552901, Undersheriff Corbett is identified as the resolving officer. Doc. 20-2 at 2. Under the GCDC inmate grievance procedure, the Jail Administrator is the person who must review and respond to an appeal. Doc. 8-2 at 6. Defendant does not explain why Undersheriff Corbett is resolving the allegedly appealed grievance instead of the Jail Administrator as the policy demands or whether Undersheriff Corbett was serving as a Jail Administrator in addressing Record Number 552901.

Ultimately, it is Defendant's burden to show Plaintiff dismissed his administrative remedies. Pearson, 665 F. App'x at 867 (quoting Turner, 541 F.3d at 1082). The one grievance Defendant points to as evidence of an appeals process is inconclusive. Defendant does not provide any other evidence of an appeal process. Defendant does not describe how the appeal process supposedly worked outside of the kiosk. For example, with Record Number 552901, Defendant fails to explain how, when, or who denied the initial grievance, how Plaintiff initiated an appeal of that grievance, or whether the appeal process that might have existed was in

conformity with the jail's written grievance policy. Defendant also fails to show Plaintiff ever appealed any other grievance (aside from Record Number 552901) or that any other inmate utilized an appeals process for denied grievances around the same time. Although Defendant provided an affidavit from Undersheriff Corbett in support of her Motion to Dismiss, that affidavit essentially restates the provision of the GCDC written grievance policy as to appeals and provides no greater insight into the availability of an appeal process at the time of the denial of Plaintiff's grievance in this case. Based on that record, I cannot conclude an appeal process was available at the time. Defendant has failed to carry her burden to show Plaintiff did not exhaust his administrative remedies. Accordingly, I **RECOMMEND** the Court **DENY** Defendant's Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **DENY** Defendant's Motion to Dismiss. Doc. 8.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 8th day of August, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA